IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ILLIA KORNEA, | : | |
| *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| RUSHMORE SERVICING, LLC, | : | No. 25-cv-4743 |
| et al., | : | |
| *Defendants*. | : | |

### MEMORANDUM

**KENNEY, J.**                                                                                    **May 21, 2026**

*Pro se* Plaintiff Illia Kornea brings this action against his mortgage loan servicer, lender, and related entities to quiet title to real property. The Second Amended Complaint asserts twelve counts against Defendants: a quiet title claim (Count I), two claims for invalid assignment (Counts II and IV), three claims for fraud (Counts III, IX, and X), two claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, and the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.* (Counts V and VIII), two claims for peonage and unlawful servitude (Counts VI and XI), one claim for unjust enrichment and conversion (Count VII), and one claim alleging that Defendants lack standing to foreclose (Count XII). ECF No. 37 (hereinafter, the "SAC") ¶¶ 76–199. Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 56, the "Motion") and Plaintiff's responses opposing the Motion (ECF Nos. 65, 70, 71). For the reasons set forth below, the Court will **GRANT** Defendants' Motion to Dismiss (ECF No. 56).

### I.        BACKGROUND

The below facts are taken from the SAC and are accepted as true at the motion-to-dismiss

stage.[1] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Plaintiff Illia Kornea brings this action to quiet title to real property located at 6314 Fernwood Avenue, Bensalem, Pennsylvania 19020 (the "Property"). SAC ¶ 63. The Property was conveyed to Plaintiff via a warranty deed that was executed and recorded in Bucks County on October 2, 2001. *Id.* ¶ 13.

On or about August 20, 2005, Plaintiff refinanced the Property with J.P. Morgan Chase Bank, N.A. ("Chase"), executing a Promissory Note and Mortgage Security Instrument with Plaintiff as the mortgagor and Chase as the mortgagee (the "2005 Mortgage"). *See id.* ¶¶ 14–15. However, Plaintiff alleges that a Non-Uniform Covenant Rider ("NUCR"), which was allegedly concealed from him by Chase, established that he was not a traditional debtor but the true source of funds and beneficiary under a constructive trust. *Id.* ¶¶ 15, 64. The 2005 Mortgage was recorded on September 19, 2005 with the Bucks County Recorder of Deeds as Instrument No. 2005126565. *Id.* ¶ 16.

On or about August 30, 2021, Plaintiff refinanced the Property again with Chase, executing another Promissory Note and Security Instrument (the "2021 Mortgage"). *Id.* ¶ 18. Plaintiff alleges that the 2021 refinancing paid off the 2005 Mortgage in full, as allegedly memorialized by a Release and Satisfaction of Mortgage that was later executed on October 19, 2021 and recorded on October 21, 2021 with the Bucks County Recorder of Deeds as Instrument No. 2021096644. *Id.* ¶¶ 18–19. The SAC claims that Chase failed to notify Plaintiff of the release of the 2005 Mortgage. *Id.* ¶ 20. As a result, Plaintiff made ten post-release payments, from September 2021 through July 2022. *Id.*

---

[1] The Court will also consider the exhibits attached to the SAC and, in instances where an exhibit is inconsistent with the allegations in the SAC, the Court will credit the contents of the exhibit. *See infra* Section II.

2

On or about July 15, 2022, Chase notified Plaintiff via letter that servicing of the 2005 Mortgage loan was being transferred to Rushmore Loan Management Services LLC ("Rushmore"), effective August 1, 2022, purportedly on behalf of Citigroup Mortgage Loan Trust 22-RP3 ("Citigroup"). *Id.* ¶ 22. Plaintiff alleges that on the dates August 8, 2022 and August 12, 2022, Chase internally marked Plaintiff's loan account as "PAID" and reported the account as "PAID/CLOSED" to credit reporting agencies. *Id.* ¶ 23. On September 6, 2022, Chase executed and recorded an Assignment of Mortgage, which, according to Plaintiff, purported to transfer the 2005 Mortgage from Chase to Citigroup. *Id.* ¶ 24. The SAC asserts that this assignment occurred approximately ten months after the 2005 Mortgage was already extinguished. *Id.* Additionally, because the supposed "cut-off date for loans in the Citigroup Mortgage Loan Trust 2022-RP3 was May 30, 2022, and the trust closed on June 30, 2022," the September 6, 2022 assignment was void. *Id* ¶ 25. Plaintiff also appears to claim that even before the September 6, 2022 assignment, Chase lost standing to enforce the 2005 Mortgage when "Chase acknowledged it did not possess the [Promissory] Note in 2012, and Fannie Mae was identified as a potential [Promissory] Note owner—further clouding the chain of ownership." *Id.* ¶¶ 27, 29 (emphasis removed).

In February and May of 2024, Plaintiff sent formal Notices of Unverified Claims via certified mail to Rushmore and Citigroup, demanding that proof of ownership of the 2005 Mortgage be provided to Plaintiff. *Id.* ¶ 30. Plaintiff alleges that Defendants have failed to respond to his notices or produce "legally sufficient documentation" of their ownership of the 2005 Mortgage loan. *Id.* ¶ 31. Plaintiff contends that because Defendants have not established that they are a "person entitled to enforce" the 2005 Mortgage or that the September 2022 assignment was valid, Defendants lack standing to enforce the 2005 Mortgage. *Id.* ¶ 32. Plaintiff alleges that despite their lack of standing, both Rushmore and Citigroup have sent him mortgage statements

and collection demands. *Id.* ¶ 33. However, according to Plaintiff, these statements and collection demands referenced numerous, inconsistent loan numbers. *Id.*

From 2023 to 2024, Plaintiff asserts that he tendered three Conditional Acceptance Instruments that sought to settle, satisfy, and discharge any alleged loan obligation. *Id.* ¶ 38. Defendants retained Plaintiff's Conditional Acceptance Instruments and failed to return or otherwise reject them. *Id.* ¶¶ 38–39. According to Plaintiff, these tenders discharged his loan obligation as a matter of law. *Id.* ¶ 42. Despite this, Defendants have continued to pursue collection activities against Plaintiff on the 2005 Mortgage, including by sending monthly statements and default notices, threatening foreclosure on the Property, and dispatching agents to photograph the Property for foreclosure purposes. *Id.* ¶ 43. As a result of these collection activities, Plaintiff alleges that he has suffered damages such as reputational and credit harm due to a lowered credit score, clouded title to the Property, and emotional distress caused by Defendants' harassing collection tactics. *Id.* ¶¶ 44, 51.

In response, Plaintiff commenced a *pro se* lawsuit concerning Defendants' collection activities on July 10, 2025 in the Court of Common Pleas of Bucks County, Pennsylvania (Case No. 2025-04919). ECF No. 1 at 1. On August 18, 2025, Defendants removed the action to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. *Id.* Plaintiff, still proceeding *pro se*, amended his Complaint on August 25, 2025. ECF No. 12. Thereafter, Defendants moved to dismiss the Amended Complaint. ECF No. 32. In response, Plaintiff filed his SAC on October 8, 2025, ECF No. 37, which the Court construed as a Motion for Leave to File a Second Amended Complaint. ECF No. 39. The Court granted the Motion for Leave, deemed the SAC filed, and denied Defendants' initial motion to

4

dismiss (ECF No. 32) as moot.[2] *Id.* On December 5, 2025, after receiving two extensions to respond to the SAC, ECF Nos. 48, 53, Defendants moved to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 56. Plaintiff responded to the Motion on February 13, 2026, ECF No. 65, and filed supplemental responses on March 30, 2026 and April 2, 2026, ECF Nos. 70–71. Accordingly, the Motion is ripe for adjudication.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (citation omitted). A complaint is plausible on its face when the plaintiff pleads a factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v.*

---

[2] Contrary to Plaintiff's numerous assertions, *see* ECF Nos. 57, 58, 59, the Court did not deny Defendants' prior motion to dismiss (ECF No. 32) on the merits in its October 10, 2025 Order. ECF No. 39. The Court denied the motion to dismiss (ECF No. 32) as moot because Plaintiff filed the SAC. *Id.* The Court explained in a footnote that it declined to evaluate the motion in light of the allegations contained in the SAC because the motion raised arguments about Plaintiff's "shotgun" style pleading and Plaintiff's SAC cured these deficiencies. ECF No. 39 at 1 n.1. Defendants' renewed Motion to Dismiss Plaintiff's SAC (ECF No. 56) was not impermissible because the Court had not yet opined on the merits of Defendants' arguments. As such, Defendants' Motion to Dismiss (ECF No. 56) complies with the Court's October 10, 2025 Order because it responds to the allegations contained in the SAC. *See id.* Plaintiff is simply incorrect on this matter. *See* ECF No. 57 at 2–3; ECF No. 58 at 3–8.

*Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, courts must construe the plaintiff's allegations liberally. *See Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011) (citation omitted). However, *pro se* plaintiffs must still follow the same rules of procedure as other litigants. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted); *Badger v. City of Phila. Office of Prop. Assessment*, 563 F. App'x 152, 154 (3d Cir. 2014) ("Complaints filed pro se are construed liberally, but even a pro se complaint must state a plausible claim for relief." (internal quotations and citation omitted)).

When deciding a motion to dismiss, district courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). "[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up). Exhibits attached to a plaintiff's own complaint are appropriate for a court to consider on a motion to dismiss. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018) (citations omitted). As relevant here, "if [a plaintiff's] own exhibits contradict her allegations in the complaint, the exhibits control." *Id.* at 112 (citation omitted); *see also ULC Oil & Gas Field Servs. v. EXCO Res. (PA), LLC*, No. 2:14-cv-72, 2014 WL 6607280, at \*5 (W.D. Pa. Nov. 19, 2014) ("It is well settled that where a claim is predicated on a written instrument that is attached as an exhibit to the complaint, the written instrument will control and courts are not required to accept as true

6

any contradictory allegations in the complaint." (citations omitted)).

## III.    DISCUSSION

Defendants move to dismiss Plaintiff's SAC as an improper shotgun pleading and for failure to state a claim. ECF No. 56. While the SAC is overly repetitive and difficult to follow at times, it does identify twelve counts, each with its own cause of action (although there is overlap in several of the counts). However, the SAC is not quite as disjointed and unspecific so as to qualify as a shotgun pleading. For the reasons stated below, the Court will dismiss all twelve counts in the SAC for failure to state a claim.

### A.    Exhibits Attached to the SAC Show that Contrary to Plaintiff's Allegations, the 2005 Mortgage Was Not Extinguished in 2021

Nearly all of Plaintiff's claims in the SAC stem from his allegations that the 2005 Mortgage was satisfied when he refinanced the Property in August 2021. SAC ¶¶ 63–65. To substantiate his claims, Plaintiff attaches a number of exhibits to the SAC that purports to show that the 2005 Mortgage was satisfied in 2021. ECF Nos. 37-2–37-8. In particular, Plaintiff points to one instrument recorded in the Bucks County Recorder of Deeds, alleging in the SAC: "A Release and Satisfaction of Mortgage was executed on or about October 18, 2021, and recorded on or about October 21, 2021, as Instrument No. 2021096644 in the Bucks County Recorder of Deeds, effectively extinguishing the 2005 lien. (See Exhibit B.)." SAC ¶ 19. Upon an examination of Exhibit B, which appears to be a Release of Mortgage with Instrument No. 2021096644, it is clear that the release actually pertains to the "Mortgage recorded on September 13, 2021, in the Office of the Recorder of Deeds of BUCKS County, Pennsylvania, in Document 2021084152" with a "DATE OF MORTGAGE" of August 30, 2021 and an "ORIGINAL MORTGAGE DEBT" of $135,450.00. ECF No. 37-2 at 39. The release was dated October 19, 2021 and recorded on October 21, 2021. *Id* at 38–39.

7

The Release of Mortgage to which Plaintiff repeatedly refers, then, appears to be a release of the 2021 Mortgage, which Plaintiff had attached to the initial complaint that he filed in July 2025 in the Court of Common Pleas of Bucks County. ECF No. 1-4 at 60–72. The 2021 Mortgage was for the amount of $135,450.00 and was dated August 30, 2021. *Id.* at 60. It was recorded on September 13, 2021 with the Bucks County Recorder of Deeds as Instrument No. 2021084152, with Chase listed as the mortgagee and Plaintiff listed as the mortgagor. *Id.* at 59. This information is consistent with that detailed in the Release of Mortgage that Plaintiff points to in Exhibit B of the SAC. *See* ECF No. 37-2 at 39 (Release of Mortgage for a mortgage dated August 30, 2021 and recorded on September 13, 2021 in the Office of the Bucks County Recorder of Deeds in Document No. 2021084152, with an original mortgage debt of $135,450.00).

The 2005 Mortgage, by contrast, was for a different sum of money ($240,000.00), was executed in 2005, and was recorded in 2005 with a completely different instrument number. *Id.* at 7–29. Even Plaintiff acknowledges this fact: "The 2005 Mortgage was recorded on September 19, 2005, with the Bucks County Recorder of Deeds as Instrument No. 2005126565 . . . . (See Exhibit A-1.)." SAC ¶ 16. The exhibits to the SAC, which Plaintiff attached himself and which he does not dispute the authenticity of, directly contradict Plaintiff's allegations in the SAC that the 2005 Mortgage was satisfied and paid off in full in 2021. Defendants correctly state that such allegations by Plaintiff are "misleading" and "demonstrably false based on documents attached to the SAC." ECF No. 56 at 7. In his response and supplemental filings, Plaintiff does not explain why or how the Release of Mortgage that he attached to the SAC as Exhibit B says what he claims it says— i.e., that the 2005 Mortgage was satisfied in 2021. *See* ECF Nos. 65, 70, 71. Rather, Plaintiff argues that "Defendants' contrary position depends on competing interpretations of documents . . . [that] cannot be resolved by crediting counsel's argument over the allegations of the complaint." ECF

8

No. 65 at 6.

However, when a court reviews an exhibit that is a part of the pleadings and observes that it conflicts with portions of the pleadings, the court is not crediting the moving party's interpretation of the exhibit over the plaintiff's interpretation. It is crediting the factual content of the exhibit over any contradicting allegations in the pleadings. The Third Circuit has held that a court may consider exhibits attached to a plaintiff's complaint on a motion to dismiss, and in situations where the exhibits contradict the allegations in the plaintiff's complaint, the exhibits control. *Vorchheimer*, 903 F.3d at 111–12; *see Mickel Drilling Partners ex rel. Mickel v. Cabot Oil & Gas Corp.*, No. 3:CV-11-0061, 2012 WL 4953081, at *8 (M.D. Pa. Oct. 16, 2012) (dismissing breach of contract claim where the exhibits attached to the plaintiffs' operative complaint confirm that the parties failed to reach a contractual agreement and so, plaintiffs were not entitled to relief); *Rose v. Rothrock*, No. 08-cv-3884, 2009 WL 1175614, at *6 (E.D. Pa. Apr. 29, 2009) (dismissing breach of contract claim where an exhibit authored and offered by the plaintiff contradicted the plaintiff's allegation that an oral agreement existed); *Centrella v. Barth*, 633 F. Supp. 1016, 1019 (E.D. Pa. 1986) (The court "accept[ed] as true the allegations of the complaint insofar as they [were] specific, factual and not contradicted by plaintiff's exhibits."); *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992) ("A plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.").

Because the Release of Mortgage that Plaintiff attached to his SAC plainly contradicts his allegation that the 2005 Mortgage was satisfied and released in 2021, the Court will not credit this allegation when deciding Defendants' Motion. Plaintiff's allegation that the "2005 Mortgage was satisfied and released as of October 19, 2021" is the basis for his quiet title claim (Count I) and related claims. SAC ¶ 85. In the SAC, Plaintiff claims that because the 2005 Mortgage was

released in 2021, the "September 6, 2022 Assignment to Citigroup Mortgage Loan Trust 2022-RP3 is void ab initio and without legal effect." *Id.* Based on these allegations, Plaintiff brought claims against the Defendants to quiet title (Count I) and for invalid assignment (Count II). Upon review of the SAC, and without taking into account the allegation that the 2005 Mortgage was satisfied in 2021, the Court finds that Plaintiff has failed to state a claim to quiet title and for invalid assignment.

Under Pennsylvania law, an action to quiet title may be brought "where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title, or interest in land." Pa. R. Civ. P. 1061(b)(2). "The purpose of a quiet title action under this statute is to remove clouds on title and resolve conflict over interests in property." *Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, 2016 WL 4076818, at *5 (E.D. Pa. Aug. 1, 2016) (citing *White v. Young*, 186 A.2d 919, 921 (Pa. 1963)). Plaintiff alleges that he is the fee simple owner of the Property and because the 2005 Mortgage "has been fully satisfied and extinguished" according to Plaintiff, the September 2022 transfer of the 2005 Mortgage from Chase to Citigroup was legally void and consequently, Defendant Citigroup has no valid interest in the Property. SAC ¶¶ 77, 79, 81. However, as explained above, the Court will not credit Plaintiff's allegation that the 2005 Mortgage was released in 2021. Notably, Plaintiff does not allege that he paid off the 2005 Mortgage loan in 2021 or prior to the September 2022 assignment or at any point in time, or that the 2005 Mortgage lien was otherwise extinguished.[3] Therefore, the SAC fails to assert that

---

[3] Plaintiff does, however, allege that in August and September of 2022, credit reporting agencies "independently reported the mortgage as fully paid and closed with a $0 balance" and that Chase had "reported the loan as paid and closed with a $0 balance in July 2022." ECF No. 70 at 1–2; *see* ECF No. 71; SAC ¶ 23. Despite Plaintiff's attempts to characterize as such, these allegations do not indicate that Plaintiff finished paying off the 2005 Mortgage loan by July/August/September

Defendant Citigroup lacks a valid interest in the Property. *See Oliver v. Bank of Am., N.A.*, No. 13-cv-4888, 2014 WL 1429605, at *3 (D.N.J. Apr. 14, 2014) (dismissing plaintiffs' quiet title claim because plaintiffs did not sufficiently allege that defendants' interests in the property were wrongful since plaintiffs did not allege that they paid off the mortgage and extinguished the lien). As such, Plaintiff cannot show that he is entitled to relief on his claim to quiet title in his favor.

In any case, Plaintiff does not have standing to challenge the validity of a mortgage assignment. In order to bring a claim, "a Plaintiff must establish that he or she has suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Doe ex rel. Doe v. Lower Merion School Dist.*, 665 F.3d 524, 542 (3d Cir. 2011) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[W]here a borrower challenges a defective mortgage assignment, he must demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment." *Khan v. Ocwen Fin. Corp.*, No. 16-cv-3292, 2017 WL 590262, at *3 (E.D. Pa. Feb. 13, 2017) (internal quotations and citation omitted). When courts have addressed a borrower's standing to challenge the validity of a mortgage assignment to which the borrower was not a party, they have generally found that borrowers lack standing "to sue for an alleged illegal or defective assignment of their mortgage." *Lehigh Valley 1 LLC v. Whitehall Fiduciary LLC as Tr. of Whitehall Tr.*, No. 24-cv-2709, 2025 WL 2346872, at *3 (E.D. Pa. Aug. 13, 2025); *Purpura v. JP Morgan Chase*, No. 16-cv-3765, 2018

---

2022 and are in fact consistent with the SAC's prior allegation that Chase transferred the servicing of the loan to Rushmore, effective August 1, 2022. SAC ¶ 22. Exhibit E-6 to Plaintiff's Notice of Newly Discovered Evidence (ECF No. 70) further supports the conclusion that the reason Plaintiff's Chase account for the loan was closed and showed a balance of $0 as of July 2022 is that the balance of the loan was transferred to Rushmore. ECF No. 70-1 at 9–11. Exhibit E-6 is an Equifax credit report showing that Plaintiff's Chase account for the 2005 Mortgage loan of $240,000 was "TRANSFERRED OR SOLD" to Rushmore. *Id.* at 10–11. Plaintiff, therefore, has not alleged that he paid off the 2005 Mortgage in full and that the lien has been extinguished.

WL 1837952, at *6 (D.N.J. Apr. 28, 2018); *Khan*, 2017 WL 590262, at *3 (finding that plaintiff, who did not allege that he was a party to, or a third party beneficiary of, a mortgage assignment, or that he was forced to pay his mortgage twice, lacked standing to challenge the validity of the assignment). This is because borrowers typically "cannot demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment." *Lehigh Valley 1 LLC*, 2025 WL 2346872, at *3 (citation omitted). And because "the only interest or right which [a borrower] or a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice," the borrower has no standing to challenge the validity of the assignment. *Id.* (citation omitted).

Here, Plaintiff has not alleged that he is a party to or a third-party beneficiary of the September 2022 assignment between Chase and Citigroup. He has also not alleged that he has made duplicate loan payments to two separate entities claiming ownership of the 2005 Mortgage. Even after the September 2022 assignment, the only entity demanding loan payments from Plaintiff on the 2005 Mortgage is the loan servicer Rushmore and its successor. Plaintiff does not allege that Chase has continued to request payment on the loan despite having assigned the 2005 Mortgage to Citigroup in 2022. Accordingly, Plaintiff has suffered no injury-in-fact and has no standing to contest the validity of the September 2022 assignment.[4] As a result, Plaintiff has

---

[4] Plaintiff also argues that the September 2022 assignment from Chase to Citigroup was invalid and void because Chase allegedly transferred ownership of the Promissory Note to Fannie Mae as of at least 2012, and because the September 2022 assignment occurred after the May 30, 2022 cut-off date for loans in the Citigroup Mortgage Loan Trust 2022-RP3 and the June 30, 2022 closing date for the trust. SAC ¶¶ 25, 29, 65, 66, 81, 89, 163. Regardless of the truth of these allegations, Plaintiff lacks standing to challenge the validity of the September 2022 assignment, as explained. With respect to Plaintiff's quiet title claim, he "fails to allege how any perceived irregularities in the assignments between third parties cloud title in the mortgage itself," *English v. Fed. Nat'l Mortg. Ass'n*, No. 13-cv-2028, 2013 WL 6188572, at *3 (D.N.J. Nov. 26, 2013), especially when Plaintiff does not allege that he has paid off the 2005 Mortgage in full.

failed to state a claim to quiet title and for invalid assignment. *See, e.g., Khan*, 2017 WL 590262, at *4 (dismissing plaintiff's quiet title claim because he "[did] not have standing to challenge the validity of the assignments of his mortgage by way of a quiet title claim"); *Pillitteri v. First Horizon Home Loans*, No. 14-cv-3076, 2015 WL 790633, at *4 (D.N.J. Feb. 25, 2015) ("Plaintiffs' claim to quiet title is dismissed because they lack standing to challenge the validity of the assignments." (footnote omitted)); *Lehigh Valley 1 LLC*, 2025 WL 2346872, at *4 (finding that because defendants "[did] not allege that they paid any more money on their loans than the amounts due, that they [were] in danger of having to make duplicate loan payments, or that any entity other than [plaintiff] has demanded loan payments from [d]efendants," they did not have standing to challenge the validity of their mortgage assignments). The Court will therefore dismiss Counts I and II.

### B.  Many of Plaintiff's Claims Are Based on Conduct by a Non-Party

As Defendants point out in their Motion, Plaintiff alleges a number of causes of action based primarily on the actions, or lack of actions, of non-party Chase. ECF No. 56 at 6–7. These causes of action include Counts III (fraud/fraudulent concealment), IV (fraudulent assignment and post-release transfers), VII (unjust enrichment and conversion), IX (fraudulent conveyance & securitization fraud), and X (fraud and fraudulent concealment). SAC ¶¶ 100–20, 142–50, 160–80. Count III of the SAC alleges that non-party Chase "knowingly and intentionally concealed critical documents and terms material to the" 2005 Mortgage loan, including the NUCR, certain closing instructions, and conflicting definitions of the term "loan" in the Note and the Mortgage. *Id.* ¶ 101. Plaintiff claims that in reasonable reliance on Chase's "misrepresentations and omissions," he sent Chase over $536,000 in loan repayments between 2005 and 2021.[5] *Id.* ¶ 106.

---

[5] As for Plaintiff's alleged damages of "[t]hree Conditional Good-Faith Tenders totaling $720,000

Thus, Count III does not plead any wrongful conduct on the part of Defendants and as a result, fails to state a claim against Defendants.

In Count IV, Plaintiff alleges that Chase fraudulently transferred the 2005 Mortgage to Defendant Citigroup and Defendants acted on this allegedly fraudulent assignment to issue monthly demands for payment, threaten foreclosure, dispatch agents to photograph the Property, and send negative reports to credit reporting agencies. *Id.* ¶¶ 113, 118. Aside from pleading fraudulent conduct by a non-party, Plaintiff has no standing to challenge the validity of the mortgage assignment between Chase and Citigroup, as explained above. And, as also discussed previously, Plaintiff has failed to allege that the 2005 Mortgage was released prior to the assignment such that the assignment is invalid. Plaintiff has put forth no other allegations why the assignment is invalid and why, therefore, Defendants' actions to enforce the 2005 Mortgage are unlawful. For these reasons, the SAC fails to state a valid claim against Defendants in Count IV.

In Count VII, Plaintiff alleges that Chase was unjustly enriched by Plaintiff's payment of $536,000 in total mortgage payments and $14,633.90 in additional payments made to Chase after the 2005 Mortgage was allegedly satisfied. *Id.* ¶¶ 143–45. As these allegations have nothing to do with any conduct by the named Defendants, Plaintiff cannot maintain a claim for unjust enrichment against Defendants. With respect to Plaintiff's claim for conversion against Defendant Rushmore for "[h]olding $720,000.00 in tendered instruments with no lawful right," *id.* ¶ 149, Plaintiff has alleged no injury resulting from his offering of the so-called tenders to Rushmore, *see supra* n.5.

---

submitted in 2023–2024 and unlawfully retained" by Defendant Rushmore, SAC ¶ 109, because the so-called tenders did not include any actual money payments or the equivalent from Plaintiff and instead consisted of annotated copies of the August 20, 2005 Promissory Note, *see* ECF No. 37-4; ECF No. 37-5 at 1–14; ECF No. 37-6 at 1–10, Plaintiff has not alleged that he suffered any damages from making the tenders. Further, Plaintiff has failed to allege how the tenders were a result of Chase's alleged fraudulent concealment of certain details relating to the 2005 Mortgage loan.

And so, Plaintiff has failed to state any viable claims against Defendants in Count VII.

Counts IX and X repeat allegations of alleged fraudulent conduct by non-party Chase. SAC ¶¶ 160–80. Count IX rehashes the claim that Chase's assignment of the 2005 Mortgage to Citigroup in September 2022 was invalid. *Id.* ¶¶ 160–69. The Court has already explained at length why such a claim is not viable. Count X appears to be largely duplicative of Count III, alleging that Chase concealed certain material information and documents from Plaintiff at the closing of the 2005 Mortgage and further alleging that Chase concealed the alleged release of the 2005 Mortgage in 2021 and continued to collect "post-release" payments from Plaintiff. *Id.* ¶¶ 170–80. Again, the release of the 2005 Mortgage in 2021 has been contradicted by Exhibit B to the SAC, and moreover, Plaintiff does not allege any wrongful conduct by Defendants in Count X. Therefore, Plaintiff fails to state a claim in Counts IX and X. Accordingly, the Court will dismiss Counts III, IV, VII, IX, and X.

### C. Plaintiff Fails to State Claims Under the FDCPA or the RESPA

Counts V and VIII are duplicates of each other—they both plead violations of the FDCPA and the RESPA. Defendants argue that Plaintiff has failed to sufficiently allege either of these claims. ECF No. 56 at 9–12. For the reasons described below, Plaintiff has failed to plead a claim pursuant to either statute.

The FDCPA "prohibits the use of abusive, deceptive, and unfair debt collection practices by debt collectors." *McAndrew v. Deutsche Bank Nat. Tr. Co.*, 977 F. Supp. 2d 440, 444 (M.D. Pa. 2013) (citing 15 U.S.C. § 1692(a)). In their Motion, Defendants argue that Plaintiff's claims for violation of the FDCPA should be dismissed because mortgage servicers such as Defendants "are exempt from the FDCPA unless the mortgage servicer acquired a debt that was already in default." ECF No. 56 at 9–10. Defendant's position is confirmed by the statutory language and the case law.

15

The FDCPA is only applicable to "debt collectors," which does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F); *see Sponaugle v. First Union Mortg. Corp.*, 40 F. App'x 715, 717 n.2 (3d Cir. 2002) (finding that a mortgage servicer attempting to collect payment on a loan did not meet the definition of "debt collector" under the FDCPA because the loan was not in default when the servicer acquired it); *McAndrew*, 977 F. Supp. 2d at 448 (dismissing plaintiff's FDCPA claim because plaintiff failed to allege that his loan was in default when the mortgage servicer began servicing the loan). Here, the SAC does not allege that the 2005 Mortgage was in default when servicing of the loan was transferred to Defendant Rushmore. *See* SAC ¶¶ 20–23. In fact, Plaintiff alleges that he made a payment on the loan in July 2022, right before the transfer to Rushmore became effective on August 1, 2022., *id.* ¶¶ 20, 22, indicating that the loan was not in default at the time that Rushmore began servicing it. Thus, Plaintiff's FDCPA claim fails.

The RESPA was enacted to protect the interests of loan borrowers and provides that "a borrower may request information from the servicer of a federally related mortgage." *Orman v. MortgageIT*, No. 11-cv-3196, 2012 WL 1071219, at *4 (E.D. Pa. Mar. 30, 2012) (citing 12 U.S.C. § 2605(e)(1)(A)). When a borrower requests information by sending a qualified written request ("QWR") to his loan servicer, the servicer must acknowledge receipt within 5 days and must make any necessary corrections to the borrower's account or provide a substantive response within 30 days. 12 U.S.C. §§ 2605(e)(1)(A), (2)(A)-(C). To qualify as a QWR, the communication must (1) "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower; and" (2) "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other

16

information sought by the borrower." *Id.* § 2605(e)(1)(B)(i)-(ii); *Orman*, 2012 WL 1071219, at *4.

In addition, a borrower may only seek "information relating to the servicing of [the] loan." 12 U.S.C. § 2605(e)(1)(A). And while the Third Circuit has not yet interpreted the RESPA's definition of "servicing,"[6] district courts within this Circuit have consistently held that "servicing" does not encompass documents relating to the origination and validity of the loan. *Hager v. CitiMortg., Inc.*, No. 16-cv-3348, 2017 WL 751422, at *5–6 (D.N.J. Feb. 27, 2017); *In re Lewis*, 621 B.R. 626, 631 (M.D. Pa. Bankr. 2020); *Cole v. Wells Fargo Bank, N.A.*, Civ. No. 12-1932, 2016 WL 1242765, at *9 (D.N.J. Mar. 30, 2016). Appellate courts outside of this Circuit have likewise held that communications "challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012); *see also Perron ex rel. Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017); *Poindexter v. Mercedes–Benz Credit Corp.*, 792 F.3d 406, 413–14 (4th Cir. 2015); *Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015). The Court finds the reasoning of these opinions persuasive and similarly finds that to qualify as a QWR under the RESPA, a communication may not seek only information pertaining to the validity of a loan.

The SAC only identifies one communication from Plaintiff as constituting a QWR: the March 5, 2024 letter he sent to Defendant Rushmore. SAC ¶ 154; ECF No. 37-7 at 23–29 (attached to the SAC as Exhibit K). This letter did not request information relating to the servicing of

---

[6] RESPA defines "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Plaintiff's mortgage loan—rather, it challenged the validity of the loan itself and sought proof of the origination documents and other materials relating to Defendants' ownership of the loan. *See* ECF No. 37-7 at 23–29. The requested information did not pertain to the servicing of the loan, and as such, Plaintiff's letter does not constitute a QWR under the RESPA. Therefore, Plaintiff has failed to state a claim for violation of the RESPA. Accordingly, the Court will dismiss Counts V and VIII.

### D.  Plaintiff Fails to State Claims for Peonage and Unlawful Servitude

Counts VI and XI are also duplicates and attempt to plead claims for peonage, debt coercion, and unlawful servitude against Defendants. SAC ¶¶ 130–41, 181–89. Plaintiff attempts to assert these claims under criminal statutes including 18 U.S.C. § 1581 (peonage) and 18 U.S.C. § 1584 (sale into involuntary servitude). *Id.* ¶¶ 135–36, 185. "'Peonage' is a system of labor wherein the laborer is compelled to work for his creditor in order to satisfy a debt." *Jenkins v. Trs. of Sandhills Cmty. Coll.*, 259 F. Supp. 2d 432, 445 (M.D. N.C. 2003) (citing *Bailey v. Alabama*, 219 U.S. 219, 242 (1911)). Peonage is "characterized by the involuntary performance of labor based upon indebtedness." *Dolla v. Unicast Co.*, 930 F. Supp. 202, 205 (E.D. Pa. 1996) (citing *United States v. Reynolds*, 235 U.S. 133, 144 (1914)). Involuntary servitude means "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States. v. Kozminski*, 487 U.S. 931, 952 (1988). A showing of compulsion is required for both a claim of peonage and involuntary servitude. *Dolla*, 930 F. Supp. at 205–06. Regardless of whether there is even a private right of action under the criminal statutes cited by Plaintiff, the SAC is completely devoid of any allegations that Defendants compelled Plaintiff to work in order to satisfy his debt. *See generally* SAC. Because Plaintiff does not allege that Defendants "subjected

him to any type of compulsory service," *Batista v. AT&T, Inc.*, No. 24-cv-8503, 2025 WL 1693893, at *12 (D.N.J. June 17, 2025), the SAC fails to state plausible claims for peonage and involuntary servitude. Plaintiff also does not allege that Defendants coerced him into taking on any debts.[7] Thus, the Court will dismiss Counts VI and XI.

### E.  Plaintiff Fails to State a Claim in Count XII

The SAC asserts a claim for "Lack of Delegation of Authority / No Standing to Foreclose" in Count XII. SAC ¶¶ 190–99. It is difficult to parse out what cause of action Plaintiff is seeking to pursue in this Count. *See id.* To the extent that Plaintiff is challenging, yet again, the validity of the September 2022 mortgage assignment, Plaintiff lacks standing to do so. *Supra* Section III.A. To the extent that Plaintiff is challenging Defendants' standing to foreclose on the Property, this challenge is premature. Plaintiff has not alleged that Defendants have initiated a foreclosure action against the Property, only that Defendants have threatened to initiate foreclosure. If Defendants do file a foreclosure action against the Property in the future, Plaintiff will have the opportunity to challenge Defendants' standing to do so then. *See Taggart v. Deutsche Bank Nat. Tr.*, No. 21-cv-2278, 2023 WL 4578801, at *1–2 (3d Cir. July 18, 2023) (stating that mortgagee bank "was required to establish that it was the real party in interest and had standing to pursue the foreclosure action" and finding that plaintiff was able to challenge bank's standing to enforce the mortgage in the foreclosure action (citation omitted)). Where, as here, Defendants have not yet initiated any foreclosure proceeding, there is no standing or lack of standing to enforce the mortgage for Plaintiff

---

[7] Debt coercion is not a recognized cause of action. Plaintiff may be attempting to allege a violation of the FDCPA, which "forbids a debt collector [from] coerc[ing] a debtor into repaying a debt with threats that the debt collector legally can't or factually won't carry out." *Solberg v. Victim Servs., Inc.*, 415 F. Supp. 3d 935, 952 (N.D. Cal. 2019). However, as discussed previously, Defendants do not qualify as "debt collectors" under the FDCPA and so, Plaintiff cannot seek relief against Defendants for any alleged violations of the FDCPA. *Supra* Section III.C.

to challenge. As such, Count XII of the SAC does not state a valid claim and the Court will dismiss it.

## IV.    CONCLUSION

For the reasons set forth above, the Court will **GRANT** the Defendants' Motion to Dismiss (ECF No. 56) in full. The SAC will be **DISMISSED** in its entirety without prejudice. An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**
